48 F.3d 134
 67 Fair Empl.Prac.Cas. (BNA) 258,
66 Empl. Prac. Dec. P 43,471
Carl D. DAVIS, Plaintiff-Appellant,
v.
NORTH CAROLINA DEPARTMENT OF CORRECTION, Defendant-Appellee.
Equal Employment Opportunity Commission, Amicus Curiae.
 No. 93-2640.
 United States Court of Appeals,
Fourth Circuit.
 Argued Sept. 29, 1994.
Decided March 2, 1995.
 
 ARGUED: Abraham Penn Jones, Law Offices of Abraham Penn Jones, Raleigh, NC, for appellant. Valerie L. Bateman, Asst. Atty. Gen., North Carolina Dept. of Justice, Raleigh, NC, for appellee. ON BRIEF: Michael F. Easley, Atty. Gen., James Peeler Smith, Special Deputy Atty. Gen., North Carolina Dept. of Justice, Raleigh, NC, for appellee. James R. Neely, Jr., Deputy Gen. Counsel, Gwendolyn Young Reams, Associate Gen. Counsel, Lorraine C. Davis, Asst. Gen. Counsel, Sophia C. Goodman, Office of Gen. Counsel, E.E.O.C., Washington, DC, for amicus curiae.
 Before LUTTIG and WILLIAMS, Circuit Judges, and CHASANOW, United States District Judge for the District of Maryland, sitting by designation.
 Reversed and remanded by published opinion. Judge LUTTIG wrote the opinion, in which Judge WILLIAMS and Judge CHASANOW joined.
 OPINION
 LUTTIG, Circuit Judge:
 
 
 1
 Appellant Carl D. Davis challenges the removal of his employment discrimination action from a state administrative agency in North Carolina to federal district court in the Eastern District of North Carolina. Because we conclude that removal was improper, we remand Davis' action to the district court for remand to the North Carolina Office of Administrative Hearings.
 
 I.
 
 2
 In September 1991, Davis applied for a position as a correctional program assistant with the North Carolina Department of Corrections (DOC). After the DOC denied Davis' application, Davis filed a pro se discrimination claim with the Equal Employment Opportunity Commission (EEOC), in which he contended that he "was discriminated against because of [his] race, Black, in violation of the Civil Rights Act of 1968 [sic], as amended." J.A. at 113B. Davis' complaint made no reference to violations of North Carolina antidiscrimination law.
 
 
 3
 Pursuant to 42 U.S.C. Sec. 2000e-5(c), the EEOC deferred processing Davis' claim and referred his complaint to North Carolina's Office of Administrative Hearings (OAH), the state agency established to hear discrimination claims referred from the EEOC. See N.C.Gen.Stat. Sec. 7A-759. After investigating the DOC's decision not to hire Davis, the Director of OAH's Civil Rights Division determined "that there is reasonable cause to believe that [DOC] has engaged in an unlawful employment practice in violation of Title VII of the Civil Rights Act of 1964." J.A. at 113F. The Director then invited the parties "to participate in conciliation efforts ... intended to bring about total compliance with Federal laws and regulations governing unlawful employment discrimination." J.A. at 113F. Efforts at conciliation ultimately failed.
 
 
 4
 A worksharing agreement between the OAH and the EEOC, entered into pursuant to 42 U.S.C. Sec. 2000e-8(b), defined Davis' options upon the failure of conciliation efforts. J.A. at 61-77. That agreement provided that after conciliation failed, a complainant could request a hearing before a state administrative law judge or request that the EEOC resume jurisdiction over the claim. J.A. at 65. Davis opted for a hearing before a state administrative law judge.
 
 
 5
 After Davis filed his petition requesting a state administrative hearing, DOC filed a Petition for Removal pursuant to 28 U.S.C. Sec. 1441 and removed Davis' action to federal district court in the Eastern District of North Carolina. Davis filed a Motion to Remand challenging the district court's jurisdiction over his claim. The district court denied Davis' motion and certified an interlocutory appeal so that this court could resolve the jurisdictional question.
 
 II.
 
 6
 Title VII of the Civil Rights Act of 1964 creates a federal cause of action for employment discrimination. Before a federal court may assume jurisdiction over a claim under Title VII, however, a claimant must exhaust the administrative procedures enumerated in 42 U.S.C. Sec. 2000e-5(b), which include an investigation of the complaint and a determination by the EEOC as to whether "reasonable cause" exists to believe that the charge of discrimination is true. Additionally, when the alleged discrimination occurs in a state that has enacted a law "prohibiting the unlawful employment practice alleged" and has "establish[ed] or authoriz[ed] a State or local authority to grant or seek relief from such practice," Title VII provides that
 
 
 7
 no charge may be filed [with the EEOC] under subsection (b) of this section by the person aggrieved before the expiration of sixty days after proceedings have been commenced under the State or local law, unless such proceedings have been earlier terminated.
 
 
 8
 42 U.S.C. Sec. 2000e-5(c). Thus, where state law protects persons against the kind of discrimination alleged, "complainants are required to resort" to "state and local remedies" before they may proceed to the EEOC, and then to federal court, on their claims of discrimination under federal law. New York Gaslight Club, Inc. v. Carey, 447 U.S. 54, 62, 100 S.Ct. 2024, 2030, 64 L.Ed.2d 723 (1980); see also id. at 65, 100 S.Ct. at 2031 ("Initial resort to state and local remedies is mandated, and recourse to the federal forums is appropriate only when the State does not provide prompt or complete relief." (citation omitted)). This requirement is rooted in a "policy of cooperation" between the federal government and the states, id. at 64, 100 S.Ct. at 2031, and is designed to give state agencies " 'a limited opportunity to resolve problems of employment discrimination and thereby to make unnecessary, resort to federal relief by victims of discrimination,' " id. at 63, 100 S.Ct. at 2031 (quoting Oscar Mayer & Co. v. Evans, 441 U.S. 750, 755, 99 S.Ct. 2066, 2071, 60 L.Ed.2d 609 (1979)).
 
 
 9
 Section 2000e-5(c) "has resulted in EEOC's development of a referral and deferral system," id. at 64, 100 S.Ct. at 2031, in which the EEOC delays processing a Title VII claim while the complainant first proceeds under state law in a state forum. In cases like that brought by Davis, where "a charge is filed with the EEOC prior to exhaustion of state or local remedies, the Commission refers the complaint to the appropriate local agency." Id. During the sixty day period in which the state conducts "proceedings ... under the State or local law," 42 U.S.C. Sec. 2000e-5(c), "[t]he EEOC holds the complaint in 'suspended animation.' " New York Gaslight, 447 U.S. at 64, 100 S.Ct. at 2031 (quoting Love v. Pullman, 404 U.S. 522, 526, 92 S.Ct. 616, 618, 30 L.Ed.2d 679 (1972)). The purpose of this "first hiatus is ... to give state administrative agencies an opportunity to invoke state rules of law." Yellow Freight Sys., Inc. v. Donnelly, 494 U.S. 820, 825, 110 S.Ct. 1566, 1569, 108 L.Ed.2d 834 (1990).
 
 
 10
 After a complainant has filed a claim under state law with the appropriate state agency and waited the requisite sixty days, he may file a Title VII claim with the EEOC. 42 U.S.C. Sec. 2000e-5(c); see also Kremer v. Chemical Constr. Corp., 456 U.S. 461, 469, 102 S.Ct. 1883, 1891, 72 L.Ed.2d 262 (1982) ("Only after providing the appropriate state agency an opportunity to resolve the complaint may an aggrieved individual press his complaint before the EEOC."). Or, if the complainant initially filed the complaint with the EEOC, which then referred it to the state, "the EEOC automatically [will] assume[ ] concurrent jurisdiction of the complaint" when state proceedings terminate, or upon "expiration of the 60-day deferral period, whichever comes first." New York Gaslight, 447 U.S. at 64, 100 S.Ct. at 2031.
 
 
 11
 Even at this point, however, Title VII still prohibits a claimant from invoking the jurisdiction of the federal courts. As the Supreme Court has recognized, "action by the EEOC ... is a predicate for litigation based on the federal statute." Yellow Freight Sys., 494 U.S. at 825, 110 S.Ct. at 1569.
 
 
 12
 Section 2000e-5(b) specifies the actions the EEOC must take before a private litigant may bring a Title VII claim in federal court. Alexander v. Gardner-Denver Co., 415 U.S. 36, 47, 94 S.Ct. 1011, 1019, 39 L.Ed.2d 147 (1974). That section provides that a federal discrimination claim brought by a private party cannot be heard by a federal district court until the EEOC has conducted an investigation and determined the validity of the claim. Further, the section requires that the EEOC decide whether the agency will bring the claim in federal court or whether the complainant will be issued a right-to-sue letter, which letter is essential to initiation of a private Title VII suit in federal court. 42 U.S.C. Sec. 2000e-5(b); id. Sec. 2000e-5(f)(1); see also Gladstone, Realtors v. Village of Bellwood, 441 U.S. 91, 104-05 n. 12, 99 S.Ct. 1601, 1610 n. 12, 60 L.Ed.2d 66 ("[A] complainant ... must obtain a 'right-to-sue' letter before proceeding in federal court."); McDonnell Douglas Corp. v. Green, 411 U.S. 792, 798, 93 S.Ct. 1817, 1822, 36 L.Ed.2d 668 (1973); United Black Firefighters of Norfolk v. Hirst, 604 F.2d 844, 847 (4th Cir.1979). The state proceedings play an important role even within the federal administrative process, as Title VII directs the EEOC to "accord substantial weight to final findings and orders made by State or local authorities in proceedings commenced under State or local law" in making its determination whether reasonable cause exists to believe that an employer has violated Title VII. 42 U.S.C. Sec. 2000e-5(b). The statutory command to "accord substantial weight" to the findings made under state law underscores what is explicit in section 2000e-5(c), that commencement of proceedings under state law is a prerequisite to EEOC action where a state remedial scheme exists.
 
 
 13
 Title VII thus establishes a multi-tiered administrative scheme pursuant to which a claimant is required first to file a discrimination claim under state law, where such law exists, and may not proceed to federal district court until state proceedings under state law have commenced and, after the deferral period, the EEOC has made its own determination as to the validity of complainant's claim and issued a right-to-sue letter. With these restrictions on federal court jurisdiction over Title VII claims in mind, we turn to the question of whether the district court properly exercised removal jurisdiction over Davis' claim of race discrimination.
 
 III.
 
 14
 The federal removal statute allows a defendant to remove to federal district court "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. Sec. 1441(a). Under this provision, "[o]nly state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant." Caterpillar Inc. v. Williams, 482 U.S. 386, 392, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987). In this case, Davis was never entitled to have his claim considered by the EEOC because proceedings were never commenced under the state or local law, as required by section 2000e-5(c). The EEOC never investigated, much less determined the merits of, Davis' claim, and it never issued a right-to-sue letter. It follows, therefore, that the district court would originally have been without jurisdiction over Davis' case. As explained, Title VII claims may only be brought in federal court after the EEOC has investigated the claim, made a determination as to the claim's merit, and issued a right-to-sue notice. 42 U.S.C. Sec. 2000e-5(b).[1]
 
 
 15
 Because North Carolina has a state law prohibiting employment discrimination by state agencies, see N.C.Gen.Stat. Sec. 126-16, and a state agency established to process such claims, see id. Sec. 7A-759, section 2000e-5(c) requires that proceedings under the state law be commenced before Title VII's federal administrative process can begin. At no point during this litigation, however, has the OAH commenced any proceedings "under the State or local law." The Notice of Determination issued by the director of OAH's Civil Rights Division confirms that the OAH was not investigating or processing any state law discrimination claim. The Notice concluded only "that there is reasonable cause to believe that Respondent has engaged in an unlawful employment practice in violation of Title VII." J.A. at 113F. Consistent with this conclusion, the Notice ordered the parties to engage in conciliation efforts "intended to bring about total compliance with Federal laws and regulations." J.A. at 113F. The report did not address the claim that Davis had under North Carolina law, it made no findings with regard to discrimination under the state law, and it made no effort to remedy any found or potential violations of state law.
 
 
 16
 Indeed, although not essential, it appears that Davis never even raised a claim under state law before the state agency. Davis' complaint, filed with the EEOC and referred to the OAH, states only that "I believe that I was discriminated against because of my race, Black, in violation of the Civil Rights Act of 1968 [sic], as amended." J.A. at 113B. In his brief before this court, Davis "readily concedes" that he has brought a Title VII claim of race discrimination. Appellant's Br. at 11. And the district court found no evidence that a state claim had been raised, referring to Davis' failure to bring such a claim as a "pleading error." J.A. at 120.
 
 
 17
 The only suggestion that Davis at some point might have raised a state claim comes in an oblique reference appearing in one sentence in the Notice of Determination that, in addition to the federal claim, Davis also brought a state law claim under unspecified state personnel regulations. J.A. at 113C. However, neither party references any such action in its brief and neither party could provide evidence at argument that Davis had brought such a claim.
 
 
 18
 The EEOC argues that proceedings under state law were deemed to have commenced by operation of section 2000e-5(c) because the agency forwarded Davis' complaint to the OAH. EEOC Br. at 12-13. In relevant part, that section provides that "[i]f any requirement for the commencement of such proceedings is imposed by a State or local authority other than a requirement of the filing of a written and signed statement of the facts upon which the proceeding is based," the proceedings will be deemed to have commenced for purposes of section 2000e-5(c) at the time a statement of facts is sent by registered mail to the appropriate state or local authority. This portion of section 2000e-5(c), however, has no application to the case before us. Even assuming that the EEOC sent Davis' statement of facts by registered mail, as required by the plain language of the provision, this provision is applicable only where the state has sought to impose requirements for the commencement of proceedings beyond the mere filing of a written and signed statement of facts, which North Carolina has not sought to do. See N.C.Gen.Stat. Sec. 150B-23(a).
 
 
 19
 More important for purposes of this case, that section 2000e-5(c) deems the state proceedings to have commenced upon mailing of the charge to the state agency is not dispositive of whether the proceedings were commenced under state law, as required by the previous sentence of the same section.[2] At the very least, we believe that where, as here, a complainant steadfastly maintains that he has brought only a Title VII claim and the state referral agency unequivocally addresses only that claim, proceedings under state law have not commenced for purposes of section 2000e-5(c).[3] Because the OAH never commenced proceedings under the applicable state law, Davis never had a charge properly pending before the EEOC. He thus was never entitled to a right-to-sue letter from the EEOC, and consequently the federal district court had no jurisdiction over his claim.
 
 
 20
 We have long held that receipt of, or at least entitlement to, a right-to-sue letter is a jurisdictional prerequisite that must be alleged in a plaintiff's complaint. United Black Firefighters of Norfolk v. Hirst, 604 F.2d 844, 847 (4th Cir.1979) ("[A] plaintiff in a civil action under Title VII must allege and prove filing of a timely charge of discrimination with the Equal Opportunity Commission together with receipt of, and action on, a statutory notice of his right to sue."); Perdue v. Roy Stone Transfer Corp., 690 F.2d 1091, 1093 (4th Cir.1982) ("[I]t is entitlement to a 'right to sue' notice, rather than its actual issuance or receipt, which is a prerequisite to the jurisdiction of the federal courts under Sec. 2000e-5(f)(1)."); see also Bullard v. Sercon Corp., 846 F.2d 463, 468 (7th Cir.1988) (Posner, J.) ("Title VII's requirement that the plaintiff exhaust the administrative remedies provided by the statute is jurisdictional; that is, a court is obligated to enforce the requirement even if the defendant has overlooked it."); Lowe v. City of Monrovia, 775 F.2d 998, 1003 (9th Cir.1985) (Reinhardt, J.) ("When a plaintiff fails to raise a Title VII claim before the EEOC, the district court lacks subject matter jurisdiction to hear it."). Compare Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393, 102 S.Ct. 1127, 1132, 71 L.Ed.2d 234 (1982) (holding that Title VII's timely filing requirements are not jurisdictional); Baldwin County Welcome Ctr. v. Brown, 466 U.S. 147, 152 n. 6, 104 S.Ct. 1723, 1726 n. 6, 80 L.Ed.2d 196 (1984) (per curiam). Thus, where "[n]either the complaint nor the amended complaint alleges" that the plaintiff has "complied with these prerequisites," the plaintiff has not "properly invoked the court's jurisdiction under Title VII." United Black Firefighters, 604 F.2d at 847.[4]
 
 
 21
 Because the district court in this case would not have had original jurisdiction over Davis' claim, as would be true in any case where a plaintiff has yet to have his discrimination claim considered by the EEOC, it was likewise without removal jurisdiction to consider Davis' complaint.
 
 IV.
 
 22
 Although we ultimately agree with the state's position that Davis only raised a federal claim, we reject the state's reasoning that the claim before the OAH was necessarily a federal claim because the worksharing agreement between the EEOC and OAH requires the OAH to resolve Title VII claims before addressing state claims. The worksharing agreement says no such thing. The relevant provision of the agreement provides that[i]n an action which has been timely filed with EEOC and in which a petition for a contested case has also been timely filed with OAH, the 706/EEOC investigation process will be completed prior to the commencement of the administrative hearing procedure.
 
 
 23
 Worksharing Agreement p IV.C; J.A. at 66. This provision does not purport to confer federal jurisdiction over Title VII claims on a state forum, nor could it. It merely ensures that, when a claimant pursues a remedy for discrimination both by filing a charge with the EEOC under section 2000e-5(b) and by filing a petition for a contested case hearing before the OAH under N.C.Gen.Stat. Sec. 150B-23, the OAH will complete its investigation before initiating the administrative procedures outlined in N.C.Gen.Stat. Secs. 150B-23--150B-37. This affords the EEOC the benefit of OAH's factual findings without having to wait through the potential delays of lengthy state procedures.
 
 
 24
 While the state erroneously contends that Davis' claim is necessarily a federal claim, the EEOC erroneously contends that Davis' claim was necessarily one under state law. We decline to engage in such claim recharacterization. The EEOC argues that Davis could only have stated a state claim because OAH lacks jurisdiction to hear a Title VII claim. Assuming arguendo that OAH is without authority to decide a Title VII claim, see Patzer v. Board of Regents, 763 F.2d 851, 857 (7th Cir.1985) (dicta), it does not follow from the fact that it decided the federal claim without authority, that it in fact decided a state law claim. OAH's action on the federal claim over which it had no jurisdiction is simply without legal effect, just as if a federal court had decided a state law claim without jurisdiction to do so.
 
 
 25
 In reaching the erroneous conclusion that it had jurisdiction over Davis' claim, the district court never addressed the question of whether proceedings under state law had commenced such as to authorize EEOC action, and in turn federal court jurisdiction. Instead, the court reasoned that it had jurisdiction because the OAH had investigated and processed a Title VII claim. J.A. at 120. Even on the assumption that OAH had jurisdiction to decide a federal Title VII claim, that it processed such a claim is not alone sufficient to vest the federal court with jurisdiction over the claim. As explained, where applicable, a complainant must first resort to the complementary process of claim adjudication under state law, see, e.g., Kremer, 456 U.S. at 469, 102 S.Ct. at 1891 ("[N]o charge of discrimination may be actively processed by the EEOC until the state remedy has been invoked and at least 60 days have passed, or the state proceedings have terminated."), and must, with very few exceptions, exhaust his administrative remedies with the EEOC before he is entitled to proceed in federal court. Removal jurisdiction cannot exist until the same jurisdictional prerequisites have been satisfied.
 
 V.
 
 26
 We believe this case to be something of an aberration. The plaintiff insists that he has brought only a Title VII claim, and the state referral agency addressed only that claim, notwithstanding the conceded applicability of state discrimination laws. If a federal court could obtain jurisdiction on facts such as these, Congress' intent that claims first be considered under applicable state law before a Title VII claim is adjudicated could be completely frustrated by a plaintiff alone, and certainly by a plaintiff and a willing state referral agency in combination, merely by the former refusing to pursue and the latter refusing to consider discrimination claims under state law. Indeed, the parties to a lawsuit could bypass the entire process of review by the EEOC and proceed directly into federal court. That such circumventions of the statute would be possible were we to accept the interpretation of Title VII urged upon us by appellee, is ample evidence that such an interpretation must be rejected.
 
 VI.
 
 27
 The district court's denial of appellant's motion to remand is reversed and the case is remanded to the district court with instructions to remand to the OAH for further proceedings.
 
 
 28
 REVERSED AND REMANDED.
 
 
 
 [1]
 Because we determine that the district court lacked original jurisdiction over Davis' claim, we do not address whether a state administrative agency is a "state court" for purposes of section 1441
 
 
 [2]
 By regulation, the EEOC has attempted to eliminate the predicate to application of this provision, that the state has imposed more stringent filing requirements than a written and signed statement of the facts. In the same regulation, the agency has modified the statutory requirement that the complainant's statement be sent to the state forum by registered mail. 29 C.F.R. Sec. 1601.13(a)(4)(i)(B). Neither party nor the EEOC rested its argument on--or indeed even cited--this regulation. Because the litigants do not address this regulation, and because this regulation would have no bearing on our disposition of the case given the reasoning we employ above, we do not consider its application here
 
 
 [3]
 In Mohasco Corp. v. Silver, 447 U.S. 807, 100 S.Ct. 2486, 65 L.Ed.2d 532 (1980), the Supreme Court in dicta "treat[ed]" the state proceedings as having been instituted on the date that the EEOC forwarded complainant Silver's letter alleging discrimination to the state referral agency, see id. at 816, 100 S.Ct. at 2492, even though Silver waited almost a month before filing his formal complaint with the state agency, see Silver v. Mohasco Corp., 602 F.2d 1083, 1085-86 (2d Cir.1979). In Mohasco, however, it was understood that the proceedings before the state agency had in fact been conducted under the applicable state law against discrimination
 In his complaint filed with the EEOC, before referral, Silver merely recited the underlying facts of the alleged discrimination, without referencing any federal or state law. Joint Appendix at A-3--A-5, Mohasco Corp. v. Silver, 447 U.S. 807, 100 S.Ct. 2486, 65 L.Ed.2d 532 (1980) (No. 79-616). But in his complaint filed with the state agency, Silver "charge[d] respondent with terminating [him] from employment because of [his] creed, in violation of the Human Rights Law of the State of New York." Appendix to Cert. Petition at 14, Mohasco Corp. v. Silver, 447 U.S. 807, 100 S.Ct. 2486, 65 L.Ed.2d 532 (1980) (No. 79-616) (emphasis added); see id. at 13 (alleging "an unlawful discriminatory practice relating to [e]mployment in violation of Article 15 of the Executive Law of the State New York." (emphasis added)).
 The New York State Division of Human Rights (NYDHR) conducted proceedings only under state law. The NYDHR reported in its Determination and Order After Investigation that "there is no probable cause to believe that the respondent(s) engaged in" a "violation of the Human Rights Law of the State of New York." Joint Appendix at A-45, Mohasco Corp. v. Silver, 447 U.S. 807, 100 S.Ct. 2486, 65 L.Ed.2d 532 (1980). The opinion of the New York State Human Rights Appeal Board further confirms that the NYDHR only conducted proceedings under state law. See id. at A-47.
 Insofar as is relevant to the question of whether the commenced proceedings were under state law, therefore, Mohasco could hardly be more different than the case sub judice.
 
 
 [4]
 Even if this circuit allowed exceptions to the jurisdictional requirement, see generally Puckett v. Tennessee Eastman Co., 889 F.2d 1481, 1486-88 (6th Cir.1989), Davis' claim still could not be heard in federal court because he has presented no "compelling circumstances which justify a departure from established procedures," id. at 1488