EQUAL EMPLOYMENT OPPOR-
TUNITY COMMISSION,
Plaintiff–Appellee,

v.

STATE OF ILLINOIS, Defendant–
Appellant.

No. 94–3966.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 12, 1995.

Decided Nov. 1, 1995.

James R. Neely, Jr., Susan Starr (argued), Paula R. Bruner, Equal Employment Opportunity Commission, Office of General Counsel, Washington, DC, Jean P. Kamp, John C. Hendrickson, and Gordon Waldron, Equal Employment Opportunity Commission, Chicago, IL, for Plaintiff–Appellee.

Terence J. Corrigan, Asst. Atty. Gen., Springfield, IL, and Deborah L. Ahlstrand, Asst. Atty. Gen. (argued), Chicago, IL, for Defendant–Appellant.

Before POSNER, Chief Judge, and MANION and ROVNER, Circuit Judges.

POSNER, Chief Judge.

The Equal Employment Opportunity Commission brought this suit seven years ago against the State of Illinois, alleging a violation of the Age Discrimination in Employment Act, and obtained a judgment of several hundred thousand dollars on behalf of two public school teachers. The state has appealed. It is a curious suit. The teachers were not employed by the state, but by local school districts.

Here is how the suit arose. Originally, the age discrimination law protected only employees under the age of 70. The age–70 lid was taken off by amendment effective January 1, 1987, and one consequence was to make mandatory retirement at a fixed age— any age—unlawful, with a few immaterial exceptions. 29 U.S.C. § 631(a). At the time, a provision of the Illinois school code terminated the tenure of public school teachers at age 70. Ill.Rev.Stat. ch. 122, ¶ 24–11. The provision was repealed in 1988, effective January 1, 1989. So for two years the provision was still on the books even though throughout the entire period it was plainly invalid by virtue of the supremacy clause of the U.S. Constitution. It was during this period that the two teachers in question reached the age of 70 and were told by their principals that therefore they had to retire. This was false. The relevant provision of the school code had been knocked out by the amendment to the federal age discrimination law. Nevertheless the teachers yielded to the insistence of their principals and retired. They could have sued their employers, the school districts, for violation of the federal law, but they did not and it is now too late. 29 U.S.C. § 626(d); *Thelen v. Marc's Big Boy Corp.*, 64 F.3d 264, 267 (7th Cir.1995). The EEOC, however, argues that the state itself violated the age discrimination law by failing to repeal the offending provision of the school code immediately or at least to notify every school district that the provision was invalid and unenforceable, and is therefore liable to the teachers.

The EEOC advances two theories of the state's liability. It does not separate them

clearly in its presentation, but they are analytically distinct. The more audacious is that the failure to repeal the mandatory-retirement provision of the school code was an act of age discrimination against the persons affected by that provision for which the state is liable even if the persons were not its employees, because "employer" is defined by the age discrimination law to include a state (§ 630(b)) and an employer may not "discriminate against any individual with respect to his ... employment, because of such individual's age" (§ 623(a)(1)). We'll call this the "interference" theory, or aiding and abetting, though the parties do not use the latter term.

We think it very doubtful that laws which forbid employers to discriminate create a blanket liability to employees of *other* employers for interference with *their* employment relationships. It might be a good idea to impose liability on those who aid or abet violations of those laws, but what sense would it make to confine that liability to persons or firms that happen to be employers? Since it would make very little sense that we can see (though we suppose it could be argued that an employer is more likely to be aware of the age discrimination law than a nonemployer and less likely to be the kind of tiny enterprise that sometimes gets exempted from regulatory laws), we find it implausible to impute to Congress an intention to create, by language not at all suggestive of any such intention, aider and abettor liability of one employer to the employees of another employer.

We are mindful that a number of Title VII cases, beginning with *Sibley Memorial Hospital v. Wilson*, 488 F.2d 1338 (D.C.Cir.1973), could perhaps be cited in support of such liability, including our own *Doe on behalf of Doe v. St. Joseph's Hospital*, 788 F.2d 411, 422–23 (7th Cir.1986), and that Title VII precedents have been influential in the interpretation of the age discrimination law. But the cases in question are ones in which the defendant so far controlled the plaintiff's employment relationship that it was appropriate to regard the defendant as the de facto or indirect employer of the plaintiff, as where a hospital prevents a nurse from being employed by a hospitalized patient. *Shrock v. Altru Nurses Registry*, 810 F.2d 658, 660 (7th Cir.1987); *Bullard v. Sercon Corp.*, 846 F.2d 463, 466 (7th Cir.1988). Indirect employment is a more limited theory of liability than aiding and abetting. A consultant who advised an employer on how to get rid of its older employees without creating evidence of a violation of the age discrimination law would be an aider and abettor but not an indirect employer, for he would not control the employment relationship, as the hospitals in the *Sibley* and *Doe* cases did.

We need not hold definitively that aider and abettor liability does not exist under the ADEA (though only an aider and abettor who is itself an employer, albeit not the employer of the employee discriminated against, could possibly be squeezed into the statute). It would make no difference in this case. For we do not see how the mere failure to repeal a preempted, hence invalid, law could, without more—and there is no more here—count as aiding and abetting a violation of the law by a different employer. When a state statute is in conflict with a valid federal statute, as is the case here—for no one denies that the age discrimination law is valid, abolished mandatory retirement (with irrelevant exceptions), and is inconsistent with the now-repealed age–70 provision of Illinois' school code—the state statute is rendered a nullity by the supremacy clause in Article VI of the Constitution. *Maryland v. Louisiana*, 451 U.S. 725, 747, 101 S.Ct. 2114, 2129, 68 L.Ed.2d 576 (1981). The EEOC argues that the local school districts, including the districts that employed the two teachers on whose behalf the Commission is suing, risked losing state funding if they violated any provision of the school code. There is no evidence of this; and it can hardly be assumed, in the absence of any evidence, that the state would violate the Constitution by punishing a school district for complying with an Act of Congress. Comity and common sense preclude us from indulging such an assumption.

Had the state insisted, in defiance of the supremacy clause, that the school districts comply with the preempted provision of the state's school code on pain of losing state aid, this would have been active aiding and

abetting, though a competently counseled school district would have told the state to go fly a kite. It is not our case. All the state did here, so far as "encouraging" a violation of the age discrimination law is concerned, was to fail either to repeal the preempted provision immediately or to notify all the school districts that the provision was invalid and should not be enforced. The lack of notification is the critical point. For it would have done the teachers no good for the state merely to repeal the provision. If the principals did not know about the amendment of the federal statute, they were unlikely to know about the repeal of the state statute. We can therefore restate the issue as whether a state is obligated to notify its subdivisions of a change in law (here, the abolition of mandatory retirement) on pain of being deemed the aider and abettor of any unlawful act, precipitated by the change, committed by a subdivision. We think not. Public school districts have their own lawyers, and their own incentives to discover changes in the law that affect their activities. Even so, it might be a good thing for the state to take steps to minimize the likelihood of an inadvertent violation of law by each of its subdivisions. But the failure to do so is not our idea of aiding and abetting a violation. The law does not aim at moral perfection. Assisting, and failing to prevent, are not the same thing. Civil liability for aiding and abetting is understood to require "substantial and knowing assistance" to the primary violator. *American Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1430 (3d Cir.1994); see also *Halberstam v. Welch*, 705 F.2d 472, 477 (D.C.Cir.1983). (Criminal aiding and abetting, the commoner type of aiding and abetting, requires even more. *United States v. Pino–Perez*, 870 F.2d 1230, 1235 (7th Cir.1989) (en banc); *United States v. Peoni*, 100 F.2d 401, 402 (2d Cir.1938) (L. Hand, J.).) We would be stretching the concept of age discrimination beyond the breaking point to hold that the State of Illinois discriminated against these teachers by failing to remind their employers that a superseded statute should not be enforced.

And this is without regard to the role of the states in the constitutional scheme. States are not subdivisions of the federal government, as public school districts are subdivisions of state government. States are quasi-sovereigns, and are owed by the federal government as well as by each other the mutual respect of sovereigns, or what is called "comity." To place upon the states a legally enforceable duty of promptly repealing preempted statutes or of promptly notifying its subdivisions of the preemption may or may not exceed the constitutional authority of Congress, *New York v. United States*, 505 U.S. 144, 112 S.Ct. 2408, 120 L.Ed.2d 120 (1992), but in any event Congress should not be lightly assumed to have imposed such duties. So the Supreme Court held in *Gregory v. Ashcroft*, 501 U.S. 452, 461, 111 S.Ct. 2395, 2401, 115 L.Ed.2d 410 (1991)—like this a case in which a state was sued under the age discrimination law. Cf. *Association of Community Organizations for Reform Now (ACORN) v. Edgar*, 56 F.3d 791, 796 (7th Cir.1995). "A person aggrieved by the application of a legal rule does not sue the rule *maker* —Congress, the President, the United States, a state, a state's legislature, the judge who announced the principle of common law. He sues the person whose acts hurt him." *Quinones v. City of Evanston*, 58 F.3d 275, 277 (7th Cir.1995) (emphasis in original). The "persons whose acts hurt" the two teachers in our case are the school districts that fired them. The state is not to blame for the failure of the teachers and of the EEOC to bring a timely suit against the immediate wrongdoers.

It is not the fact that the state acted *by statute* that is critical to our analysis. If the state had passed a statute discriminating against *its own* employees, and the discrimination would have been actionable had the state discriminated by executive order instead, the statutory form of the discrimination would not excuse the state. *EEOC v. Wyoming*, 460 U.S. 226, 103 S.Ct. 1054, 75 L.Ed.2d 18 (1983). But here the state was acting in its regulatory rather than its proprietary capacity, for it was regulating other employers, the school districts.

The Commission adumbrates the following argument: The state discriminated against the elderly when it first required public school teachers to retire at the age of 70;

this discrimination played a causal role in the forced retirement of the two teachers for whom the EEOC seeks relief; the state should not be allowed to avoid responsibility for the consequence of its discriminatory act when through timely notice it could have prevented that consequence. Yet before the 1986 amendment to the federal age discrimination law, it was clearly lawful for the State of Illinois to fix mandatory retirement ages, provided they were not below 70. Mandatory retirement at the age of 70 was common and was not considered discriminatory in an invidious sense. No hint of unlawfulness tainted the Illinois law, and therefore we do not think that the existence of the law imposed any special legal duties on Illinois when the law became invalid. The moment it became invalid by virtue of the amendment to the age discrimination law it was nullified. The state had no reason to believe that some public school districts would not get the message or that if they did not the victims of their misconduct would have no remedy against their employer because they would fail to file a timely suit.

■ The EEOC's alternative theory of liability, and the one that it presses harder in deference to the skepticism that *Shrock* and *Bullard* express about a free-wheeling "interference" theory of liability, is that the State of Illinois so extensively controls the employment of teachers by the local school districts that are their nominal employers as to be the real, or what we termed earlier the de facto or indirect, employer, liable therefore for forcing "its" employees, the two teachers, to retire because of their age. We have found no cases that apply the indirect-employer concept to the age discrimination law. But the concept is, as we noted earlier, well established in the related context of Title VII. And a closely related doctrine, the "single employer" or "integrated enterprise" doctrine, has been invoked in several age discrimination cases to impose liability on a parent corporation for age discrimination by a subsidiary when the parent controls the subsidiary's operations and personnel decisions. *Rogers v. Sugar Tree Products, Inc.,* 7 F.3d 577, 582–83 (7th Cir.1993); *York v. Tennessee Crushed Stone Ass'n,* 684 F.2d 360 (6th Cir.1982). The principle that animates

the doctrine is not limited to the technical relation of parent to subsidiary corporation (the "integrated enterprise"). We may assume therefore that the indirect-employment doctrine is applicable to age discrimination. The question is whether the facts of the present case are within the scope of the doctrine.

The State of Illinois exerts more control over public school teachers than over any private employees in the state and probably over any other persons formally employed by local governments in the state. The state fixes not only a minimum salary for all teachers—which is after all not much different from fixing a minimum wage for private as well as public employees, and no one supposes that the federal government is the indirect employer of all the workers covered by the federal minimum-wage law—but also the number of days a teacher must work, what holidays he gets off, the amount of sick leave he is entitled to, his eligibility for and length of sabbatical leave, the minimum lunch period, the terms of teachers' tenure, the rights of recalled teachers, and much else besides. 105 ILCS 5/24–1 *et seq.* But we do not think this makes the state the "real" employer of these teachers. So far as discrimination in hiring and firing on the basis of age or other forbidden characteristics is concerned, the key powers are, naturally, those of hiring and firing. Those powers are in the hands of the local school district, though constrained of course by the tenure provision of the state's school code. 105 ILCS 5/24–12. *Fields v. Hallsville Independent School District,* 906 F.2d 1017, 1020 (5th Cir.1990) (per curiam), holds that a state's role in licensing public school teachers does not make them the state's employees. To similar effect, see *Haddock v. Board of Dental Examiners,* 777 F.2d 462, 464 (9th Cir.1985). We think the present case is closer to *Fields* and *Haddock* than to the cases that classify the defendant as an indirect employer.

Were the state pulling the strings in the background—telling the local school districts whom to hire and fire and how much to pay them—a point would soon be reached at which the state was the de facto employer and the local school districts merely its

agents. That point was not reached here. There is no suggestion that the state knew about these two teachers or wanted them to resign. The provision of the school code requiring retirement at age 70 cannot be treated as a firing directive by the state, because the provision was invalid and there is no evidence that the state made any effort to enforce it.

The judgment of the district court is reversed and the case remanded with instructions to enter judgment for the defendants.

REVERSED.