Willis P. **TURNER** and Willie E. **Turner**, Appellants,

v.

**RICHARDSON INDEPENDENT SCHOOL DISTRICT,** Appellee.

No. 05–93–01608–CV.

Court of Appeals of Texas, Dallas.

Aug. 31, 1994.

Rehearing Denied Oct. 25, 1994.

---

Anthony G. Parham, Irving, for appellants.

Earl Luna, Ken T. Morrow and Tana K. Van Hamme, Dallas, for appellee.

Before LAGARDE, BURNETT and WHITTINGTON, JJ.

## OPINION

LAGARDE, Justice.

Willis P. and Willie E. Turner, husband and wife, appeal a summary judgment in favor of appellee Richardson Independent School District (RISD) on their individual claims against RISD based on the Commission on Human Rights Act (CHRA) [1] and the Whistleblower Act.[2] In two points of error, the Turners assert that (i) their CHRA causes of action are not barred by res judicata and (ii) their Whistleblower claims are not barred by res judicata, the statute of limitations, or a failure to exhaust administrative remedies. We affirm in part, and reverse and remand in part.

Willis P. Turner (Mr. Turner), a male caucasian born in October 1934, and Willie E. Turner (Mrs. Turner), a female caucasian born in April 1935, were employed as janitors by RISD from March 7, 1985 until February 19, 1991. This case arises from several allegedly improper employment practices during this period by RISD that are the subject of the following four groups of administrative complaints.[3]

First, in February 1990, the Turners complained to the federal Equal Employment Opportunity Commission (EEOC) and the Texas Commission on Human Rights (TCHR) about alleged unfair written counseling and a transfer on November 27, 1989 because of reverse race discrimination by RISD through several of its employees.[4] Second, in September 1990, the Turners filed charges with the EEOC and TCHR claiming that because of the February 1990 filings, they were retaliated against by being given poor performance evaluations in June 1990 and later being denied a pay raise in August

1. Act of June 25, 1983, 68th Leg., 1st C.S., ch. 7, 1983 Tex.Gen.Laws 37, 37–58, *amended by* Act of May 1, 1987, 70th Leg., R.S., ch. 167, § 2.20(20), 1987 Tex.Gen.Laws 1338, 1347–48, *amended by* Act of May 29, 1989, 71st Leg., R.S., ch. 1186, 1989 Tex.Gen.Laws 4824, 4824–32, *amended by* Act of August 13, 1991, 72nd Leg., 1st C.S., ch. 17, 1991 Tex.Gen.Laws 330, 341–42, *repealed by* Act of May 12, 1993, 73rd Leg., R.S., ch. 269, § 5(1), 1993 Tex.Gen.Laws 1273, *amended by* Act of May 14, 1993, 73rd Leg., R.S., ch. 276, 1993 Tex.Gen.Laws 1285, 1285–93 (formerly TEX.REV. CIV.STAT.ANN. art. 5221k, §§ 1.01–10.05) (codified at TEX.LAB.CODE ANN. §§ 21.001–.306 (Vernon Supp.1994)).

2. Act of May 30, 1983, 68th Leg., R.S., ch. 832, 1983 Tex.Gen.Laws 4751, 4751–52, *amended by* Act of May 29, 1989, 71st Leg., R.S., ch. 1222, 1989 Tex.Gen.Laws 4943, *repealed by* Act of May 4, 1993, 73rd Leg., R.S., ch. 268, § 46(1), 1993

Tex.Gen.Laws 583, 986 (formerly TEX.REV.CIV. STAT.ANN. art. 6252–16a) (codified at TEX.GOV'T CODE ANN. §§ 554.001–.009 (Vernon 1994)).

3. As individual plaintiffs below, each of the Turners asserted similar causes of action arising from the same factual events. Further, each appellant filed individual administrative complaints. For convenience, references to the Turners, their causes of action, or their administrative complaints will refer to each appellant individually, their individual causes of action, or their individual administrative complaints, respectively, unless otherwise noted.

4. EEOC charge numbers are 310–90–0817 and 310–90–0818. Although the record does not contain the formal TCHR charges, the parties agree that such charges were filed with that regulatory agency.

1990 because of those evaluations.[5] By letter dated December 14, 1990, the EEOC gave the Turners permission to sue RISD for both the alleged November 1989 unfair counseling and transfer, which formed the basis of their reverse race discrimination claim filed in February 1990, and the June and August 1990 retaliations, which formed the basis of their September 1990 charges. Third; in December 1990, the Turners filed another pair of retaliation charges complaining that through September 30, 1990, they suffered undescribed "continued retaliation" for having filed their February and September 1990 complaints.[6] By letter dated March 5, 1991, the EEOC gave the Turners permission to sue RISD for these additional retaliation charges.

Finally, in July 1991, the Turners filed additional complaints with the EEOC and TCHR.[7] The TCHR complaints were amended in October 1991. In these filings, the Turners alleged that they were constructively discharged on February 19, 1991. Mr. Turner asserted that his termination was the result of age and disability discrimination and in retaliation for complaining about alleged sexual harassment of Mrs. Turner. Mrs. Turner alleged that her discharge was the result of age, disability, and sex discrimination and in retaliation for complaining about alleged sexual harassment. A heart condition and high blood pressure were the alleged disabilities of Mr. and Mrs. Turner, respectively.[8] These charges also alleged "retaliation," but only for internal complaints made to RISD supervisors about sexual harassment. Because none of the previous EEOC or TCHR filings asserted sexual harassment charges, the fourth group of complaints alleging "retaliation" were not retaliation charges under the CHRA for previous TCHR filings. On February 18 and 19, 1992, the TCHR issued its right-to-sue letters to the Turners for this fourth group of complaints.

The Turners filed suit in federal district court on March 13, 1991 alleging certain civil rights violations. In June 1991, the Turners amended their petition to allege claims under 42 U.S.C. section 1983, 42 U.S.C. section 2000e et seq. (Title VII), and the CHRA. Their amended federal petition encompassed the factual allegations contained in the four groups of administrative complaints; however, the CHRA causes of action did not include disability discrimination.

In August 1991, the federal district court dismissed most of the Turners' claims. In its memorandum opinion and order, the federal court noted that RISD urged dismissal under federal rule of civil procedure 12(b)(1) because the Turners failed to complete EEOC administrative review for some of their claims. See FED.R.CIV.P. 12(b)(1) ("lack of subject matter jurisdiction"). After analyzing the EEOC charges and the Turners' federal complaint, the court concluded:

> [t]herefore, the only grounds for the Turners' Title VII claims are race discrimination ... and retaliation for filing the first EEOC claim. Accordingly, any Title VII claim based on other grounds is dismissed.

In addressing the CHRA claims, the court found that they mirrored the Title VII claims. Again the court noted:

> the Turners' [sic] complained to the TCHR only of discrimination based on race and retaliation for filing the first EEOC claim.[9] Those claims, therefore, are the only ones before the Court.

---

**5.** EEOC charge numbers 310–90–2574 and 310–90–2575. Again the parties agree that similar charges were filed with the TCHR.

**6.** EEOC charge numbers 310–91–0653 and 310–91–0654. The record does not contain the TCHR filings, but the Turners' affidavits, which we must take as true, assert that they made similar filings with the TCHR.

**7.** EEOC charge numbers 31C920086 and 31C920054; TCHR complaint numbers 1920023–D, 3920026, 1920015–D and 3920008.

**8.** The disability complaints were filed only with the TCHR. The EEOC had no jurisdiction over disability discrimination until June 1991, the effective date of the Americans with Disabilities Act of 1990. See 42 U.S.C. §§ 12101–12213.

**9.** The federal court record, apparently, contained the TCHR complaints that are not part of the record before us.

The court then "dismissed without prejudice" the race and retaliation claims under the CHRA because they could not be prosecuted simultaneously with the federal claims. *See* TEX.REV.CIV.STAT.ANN. art. 5221k, § 6.01(f).[10]

On March 13, 1992, after receiving the TCHR right-to-sue letter for the fourth group of administrative complaints, the Turners attempted to amend their federal suit to, apparently, add (i) state disability discrimination and intentional infliction of emotional distress claims and (ii) other federal Title VII claims. RISD opposed the amendment on grounds of undue delay, futility, and creating a new lawsuit.

In its memorandum opinion and order dated March 30, 1992, the federal court denied the Turners leave to amend. The federal court concluded that RISD would be prejudiced by introduction of "new claims after rather significant delay" because the suit was a year old and the discovery deadline was only one month away. Alternatively, the court found that amendments would be "futile" because administrative remedies had not been exhausted on these "new" claims. In July 1992, the federal court granted summary judgment in favor of RISD and "dismissed on the merits" the Turners' remaining federal race discrimination and retaliation claims.

On April 16, 1992, the Turners filed this state court action, ultimately amending their petition to assert claims only for disability discrimination and retaliation under the CHRA and retaliation under the Whistleblower statute. RISD moved for summary judgment in this state case in two stages.

RISD's first amended motion for summary judgment addressed the Turners' CHRA claims and asserted two grounds: (i) failure to exhaust administrative remedies and (ii) "res judicata and/or collateral estoppel." The trial court's July 13, 1993 amended order granting partial summary judgment did not specify the grounds upon which judgment

was granted. On July 21, 1993, the trial court denied the Turners' motion for reconsideration and affirmed the partial summary judgment "in that [the Turners'] claims are barred by res judicata."

RISD next moved for summary judgment on the Whistleblower claims asserting three grounds: (i) statute of limitations, (ii) failure to exhaust administrative remedies, and (iii) "res judicata and/or collateral estoppel." On August 23, 1993, the trial court granted summary judgment on limitations, failure to exhaust, and res judicata. This order reaffirmed that the judgment against the Turners for the CHRA claims was based only on res judicata grounds. The Turners perfected their appeal from this final judgment.

## Standard of Review

Summary judgment is designed to eliminate unmeritorious claims or untenable defenses. *Compton v. Calabria*, 811 S.W.2d 945, 949 (Tex.App.—Dallas 1991, no writ) (citing *Gulbenkian v. Penn*, 151 Tex. 412, 416, 252 S.W.2d 929, 931 (1952)). The purpose of the summary judgment rule is not to provide either a trial by deposition or a trial by affidavit but to provide a method of summarily terminating a case when it clearly appears that only a question of law is involved and that no genuine issue of material fact remains. *Gaines v. Hamman*, 163 Tex. 618, 626, 358 S.W.2d 557, 563 (1962). The grounds for summary judgment must be presented in the summary judgment motion itself. *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341 (Tex.1993). The standards we apply in reviewing a trial court's grant of a summary judgment are:

1. The movant for summary judgment has the burden to show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.

2. We must take evidence favorable to the nonmovant as true when deciding whether there is a disputed material

---

10. Former article 5221k of the revised civil statutes was repealed and recodified in 1993. *See infra* note 1. References to sections of the repealed statute refer to the version in effect following the 1989 amendments, the version in effect at the time the Turners filed their administrative complaints. *See* Act of May 14, 1993, 73rd Leg., R.S., ch. 276, § 9, 1993 Tex.Gen.Laws 1285, 1292. (The 1991 amendment was not substantive; it merely added a Sunset Act provision requiring the abolishment of the TCHR in 1999 unless "continued in existence.")

fact issue that would preclude summary judgment.

3. We must indulge in every reasonable inference in favor of the nonmovant and resolve any doubts in its favor.

*Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985).

■ When the defendant is the movant, summary judgment is proper only if the plaintiff cannot, as a matter of law, succeed upon any theory pleaded. *Peirce v. Sheldon Petroleum Co.,* 589 S.W.2d 849, 852 (Tex.Civ. App.—Amarillo 1979, no writ). Thus, the defendant can prevail by conclusively establishing against the plaintiff at least one factual element of each theory pleaded by the plaintiff, *Gibbs v. General Motors Corp.,* 450 S.W.2d 827, 828 (Tex.1970), or by conclusively establishing every factual element of an affirmative defense, *Swilley v. Hughes,* 488 S.W.2d 64, 67 (Tex.1972).

■ Conversely, the plaintiff can defeat summary judgment by presenting evidence that creates a fact question on those elements of the plaintiff's case under attack by the defendant or on at least one element of each affirmative defense advanced by the defendant. *Torres v. Western Casualty Sur. Co.,* 457 S.W.2d 50, 52 (Tex.1970); *see also Puga v. Donna Fruit Co.,* 634 S.W.2d 677, 680–81 (Tex.1982). Alternatively, the plaintiff can defeat the motion by conceding that the material facts are undisputed, but convincing the court that the defendant's legal position is unsound. *Estate of Devitt,* 758 S.W.2d 601, 602 (Tex.App.—Amarillo 1988, writ denied). The Turners' responses attacked the legal soundness of RISD's position.

### *Claims under the CHRA*

■ Texas courts follow federal principles of res judicata for determining the effect of a prior federal judgment. *Eagle Properties, Ltd. v. Scharbauer,* 807 S.W.2d 714, 718 (Tex. 1990) (op. on reh'g); *Jeanes v. Henderson,* 688 S.W.2d 100, 103 (Tex.1985). Under federal law, the doctrine of res judicata applies if:

(1) the parties are identical in both suits,

(2) the same cause of action is involved in both cases,

(3) there is a final judgment on the merits, and

(4) the prior judgment is rendered by a court of competent jurisdiction.

*Eagle Properties, Ltd.,* 807 S.W.2d at 718; *see Eubanks v. F.D.I.C.,* 977 F.2d 166, 169 (5th Cir.1992); *Nilsen v. City of Moss Point,* 701 F.2d 556, 559 (5th Cir.1983) (en banc).

The Turners concede that the first, third, and fourth elements under the federal res judicata test are present. The Turners argue, however, that res judicata cannot apply because the causes of actions decided in the federal court are different than those asserted in state court. RISD correctly points out, in response, that res judicata precludes not only causes of action that *were* previously brought, but also those that could have been brought and *were not. Nilsen,* 701 F.2d at 560; *see Eagle Properties, Ltd.,* 807 S.W.2d at 718; *Jeanes,* 688 S.W.2d at 104. RISD characterizes the Turners' state claims as ones that fall under this rule.

The undisputed summary judgment evidence established that the federal court dismissed the Turners' federal race discrimination and retaliation claims "on the merits" through summary judgment. The federal court expressly limited the causes of action before it to race discrimination and retaliation through poor performance evaluations as alleged in the first two EEOC complaints. Neither of those claims on its face, however, is the basis of the Turners' state suit.

The second amended petition in the state court action specifically alleges that RISD violated state law by discriminating on the basis of *disability* through acts that led to the Turners' constructive discharge in February 1991. Further, the alleged acts of *retaliation* do not include the June 1990 performance evaluations. None of the factual allegations supporting the Turners' state causes of action were included in the February and September 1990 race discrimination and retaliation charges filed with the EEOC and TCHR.

■ State claims not brought in a previous federal lawsuit based on the same transaction

will not be barred by res judicata if the federal court did not possess jurisdiction over the omitted state claims or, having jurisdiction, would clearly have declined to exercise that jurisdiction as a matter of law. *See Eagle Properties, Ltd.*, 807 S.W.2d at 718. If jurisdictional grounds exist, this formulation of the rule presumes that the federal judge would have adjudicated the state law claims. *Mohamed v. Exxon Corp.*, 796 S.W.2d 751, 756 (Tex.App.—Houston [14th Dist.] 1990, writ denied). Thus, when the record is silent, state courts must presume res judicata applies. *Id.* at 756–57.

### A. Disability claims

■ The record before us, however, is not silent with regard to the disability claims. RISD concedes that the Turners attempted to add their state disability claims by amending their federal petition. The federal court noted that under federal procedure, accepting this type of amendment was within the *discretion* of the court. Relying on *Union Planters National Leasing, Inc. v. Woods*, 687 F.2d 117, 121 (5th Cir.1982), the court listed several factors to consider in exercising its discretion: "prejudice to the opposing party, undue delay, repeated failure to cure deficiencies with prior amendment, bad faith, dilatory motive and futility of amendment." The federal court specifically found that RISD would have been prejudiced by these "new" causes of action based on "significant delay" and, alternatively, noted the "futility" of the claims due to the Turners' failure to exhaust administrative remedies.

RISD argues that because the federal court exercised its discretion based on the *Turners'* delay in attempting to amend, res judicata should still apply. Although RISD concedes that the federal court gave an alternative jurisdictional reason, it argues that "the mere presence of the first [reason] indicates a willingness to exercise jurisdiction had the [Turners] *diligently* and *properly* pursued their claims." (Emphasis added.)

RISD's argument is based on an interpretation that the "significant delay" was the Turners' fault. We disagree with RISD's interpretation. First, the order does not address fault. The federal court expressly stated that "dilatory motive" was a factor available for its consideration; yet, it declined to state dilatory motive as a reason for denying the amendment. Second, the undisputed facts show that the Turners met all deadlines for their EEOC and TCHR complaints. Their civil actions were timely filed after receiving right-to-sue letters from both agencies. In fact, despite having sixty days to file their disability suit under the CHRA after receiving the February 18 and 19, 1992 right-to-sue letters, they sought to amend their federal suit less than thirty days later. *See* TEX.REV.CIV.STAT.ANN. art. 5221k, § 7.01(a).

Therefore, assuming, without deciding, that the federal court had jurisdiction,[11] we reject RISD's argument. We conclude that the federal court exercised its discretion and declined jurisdiction as a matter of law for a clearly stated reason: *new* causes of action in *this* federal suit would prejudice RISD because only one month of discovery time remained.

We hold that res judicata does not bar the Turners' disability causes of action in state court when, on the facts before us, a federal district court discretionarily denied appending the same claims to a pending federal suit.

### B. Non–Whistleblower retaliation claims

The non-Whistleblower retaliation claims, however, are more problematic. The Turners' state petition alleges several acts of retaliation without specifying dates of occurrence. Nevertheless, all alleged acts must have occurred prior to February 19, 1991 when the Turners were allegedly constructively discharged. The Turners formally complained of one act of retaliation to the EEOC and the TCHR in December 1990 and

11. The record before us does not contain the amended petition that the Turners sought to file in federal court. We are unable to determine whether the federal court would have had jurisdiction of each of the new claims asserted in the amendment. Nevertheless, for purposes of addressing RISD's argument, we assume that each "new" claim in the proposed amended federal complaint complied with either the (i) federal question, (ii) pendant, or (iii) ancillary requirements necessary to invoke federal court jurisdiction.

received right-to-sue letters. The Turners filed suit in federal court in March 1991 asserting retaliation claims. The federal petition, however, alleged several retaliatory acts not specified in the original administrative complaint. Some of these acts, we assume, were the basis of separate pending administrative complaints. The federal court adjudicated the retaliation claim before it on the merits. We must decide whether res judicata precludes further retaliation claims in state court. Under these facts, we conclude that it does.

■■■■■ Res judicata bars claims that could have been advanced in support of the cause of action in a former adjudication, not merely those that were adjudicated. *Nilsen,* 701 F.2d at 560. In the Fifth Circuit, "it is unnecessary for a plaintiff to exhaust administrative remedies prior to urging a retaliation claim growing out of an earlier [EEOC] charge." *Gottlieb v. Tulane Univ.,* 809 F.2d 278, 284 (5th Cir.1987) (quoting *Gupta v. East Tex. State Univ.,* 654 F.2d 411, 413 (5th Cir. Unit A Aug. 1981)); *see also Baker v. Buckeye Cellulose Corp.,* 856 F.2d 167, 169 (11th Cir.1988). By pleading retaliatory acts that occurred months after the complained-of retaliation specified in the administrative complaints, the Turners obviously were attempting to prosecute their federal retaliation suit under this rule. When the federal court dismissed the Turners' retaliation claim on the merits, *all* retaliation claims alleged in the federal petition were disposed of on the merits. We conclude, therefore, that the federal test for res judicata is satisfied with regard to the Turners' non-Whistleblower retaliation claims.

The trial court erred in granting summary judgment on the Turners' disability claims under the doctrine of res judicata, and we sustain the Turners' first point of error regarding these causes of action. Because the trial court did not err in concluding that res judicata barred the Turners' non-Whistleblower retaliation claims, we overrule the

Turners' first point of error with regard to those causes of action.

### Whistleblower Act Claims

In their second point of error, the Turners assert that their Whistleblower claims are not barred by res judicata, limitations, or a failure to exhaust administrative remedies. We first address the statute of limitations arguments.

The Whistleblower Act requires suit to be filed not later than the ninetieth day after the date of the alleged violation, excluding time spent exhausting the employers' internal grievance or appeal procedures. TEX. GOV'T CODE ANN. §§ 554.005–.006 (Vernon 1994).[12] Exhaustion of internal remedies, however, is not required if not completed before the thirty-first day after they were initiated. *Id.* § 554.006(d). Therefore, at most, a suit must be filed within 120 days following the violation. *See id.* §§ 554.005–.006.

The Turners allege that they were constructively terminated on February 19, 1991 in retaliation for filing claims of discrimination. The Turners filed their original petition on April 16, 1992, well beyond the 120-day maximum limitations period. *See* TEX. GOV'T CODE ANN. §§ 554.005–.006 (Vernon 1994). The Turners assert, however, that the limitations period under the CHRA and the Whistleblower Act conflict. Relying on *J & J Beverage Co. v. Texas Alcoholic Beverage Commission,* 810 S.W.2d 859, 860 (Tex. App.—Dallas 1991, no writ) ("When two statutes concern the same subject matter, ... the more specific provisions of one control over the more general provisions of the other."), the Turners claim that the provisions of the more specific statute should control.

In this case, the CHRA precluded the Turners' discrimination suits until they exhausted their administrative remedies. *See Schroeder v. Texas Iron Works, Inc.,* 813 S.W.2d 483, 485 (Tex.1991). After receipt of

---

**12.** The Turners brought their Whistleblower claims under former article 6252–16a of the revised civil statutes, which was repealed and recodified in 1993. *See infra* note 2. We will refer to the recodified version, however, because no amendments have been made to the version in effect at the time of the filing of the Turners' claims, see *infra* note 2, and the codification was not intended to make substantive changes in the law. *See* Act of May 4, 1993, 73rd Leg., R.S., ch. 268, § 47, 1993 Tex.Gen.Laws 583, 986.

the right-to-sue letters on February 18 and 19, 1992, the Turners had sixty days to file suit, or until April 20, 1992.[13] *See* TEX.REV. CIV.STAT.ANN. art. 5221k, § 7.01. The Whistleblower Act, however, required that their suit be filed, at most, no later than June 19, 1991. *See* TEX.GOV'T CODE ANN. §§ 554.005–.006 (Vernon 1994). The Turners argue that "both statutes deal with retaliatory conduct on the part of governmental employers," and the CHRA limitation period should control because it "deals specifically with retaliation for filing a charge of discrimination" while the Whistleblower Act concerns "all types of retaliatory behavior." We disagree.

This Court in *J & J Beverage Co.* was concerned with two statutes: one prohibiting selling beer to minors and the other prohibiting selling them alcoholic beverages. The culpable mental state for a conviction for selling beer, however, was greater than that required for selling alcoholic beverages. We concluded in *J & J Beverage Co.* that to prevent the greater culpability requirement in the beer statute from losing all meaning, the alcoholic beverage statute must be construed to exclude beer. *J & J Beverage Co.,* 810 S.W.2d at 861. The statutory construction in *J & J Beverage Co.* was required for two reasons: (i) the subject matter of one statute, beer, necessarily fell within the purview of the other statute, alcoholic beverages; and (ii) the greater culpability requirement of the beer statute was made meaningless by the lesser requirement in the alcoholic beverage statute.

■ The Turners' reliance on *J & J Beverage Co.* is misplaced because it is factually distinguishable from the case before us. Contrary to the Turners' implied assertion, the CHRA is not limited to "governmental employers." *See* TEX.REV.CIV.STAT.ANN. art. 5221k, § 2.01(6), (7). The purpose of the CHRA is "to secure for *[all] persons* within the state, including disabled persons, freedom from discrimination in certain transactions concerning employment, and thereby to

protect the *personal* dignity of persons within the state." *Id.* § 1.02(2) (emphasis added). The Whistleblower Act, on the other hand, protects *public employees* from retaliation by their employer when, in good faith, employees report a violation of law to an appropriate law enforcement authority. TEX. GOV'T CODE ANN. § 554.002 (Vernon 1994); *Texas Dept. of Human Servs. v. Green,* 855 S.W.2d 136, 142 (Tex.App.—Austin 1993, writ denied). Further, the Whistleblower Act traditionally "has been applied to public employees who are fired in retaliation for reporting their employer's violations of law that are detrimental to *the public good or society in general.*" *Stinnett v. Williamson County Sheriff's Dept.,* 858 S.W.2d 573, 575 (Tex. App.—Austin 1993, writ denied). Although the same act by an employer may appear to be prohibited by both statutes, the purposes, rights protected, and remedies under the statutes are different.[14]

RISD attempts to distinguish *J & J Beverage Co.* by arguing that the Turners could have (1) timely filed their Whistleblower claims, (2) actively pursued their EEOC and TCHR administrative remedies until agency permission to sue was granted, and (3) amended their Whistleblower suit to timely add the CHRA claims. Appellee is incorrect. The CHRA expressly prohibits filing a complaint with the TCHR under the CHRA after initiating a court action under "other law" based on "an act that would be [an] unlawful employment practice under [the CHRA]." TEX.REV.CIV.STAT.ANN. art. 5221k, § 6.01(f); *see Fiorenza v. First City Bank–Cent.,* 710 F.Supp. 1104, 1105 (E.D.Tex.1989) (suit under CHRA not maintainable simultaneously with action under federal Age Discrimination in Employment Act).

On our facts, the Turners were expressly prevented from maintaining both actions simultaneously. Nevertheless, the limitations requirements of the Whistleblower statute are not made meaningless by the CHRA

---

**13.** Monday, April 20th was the first non-weekend, non-holiday following the sixtieth day after February 18–19, 1992. *See* TEX.R.CIV.P. 4.

**14.** We emphasize our use of "appear" and stress that the holding of *Stinnett* is not before us in

this appeal. *See Stinnett,* 858 S.W.2d at 577 (retaliation for age discrimination not valid claim under Whistleblower Act; victim's sole remedy is CHRA).

limitation requirements. By expressly considering other "actions in a court ... under other law" and requiring an election of remedies, the legislature has provided a solution should a conflict arise between the two causes of action it created.[15] *See* Tex.Rev. Civ.Stat.Ann. art. 5221k, § 6.01(f). The resolution to the Turners' asserted limitations conflict is that they must elect only one remedy.

■ We conclude that the Whistleblower Act and the CHRA have different purposes, protect different rights, and provide different remedies. If a plaintiff can prosecute a cause of action under each, he must comply with each statute's limitation provisions or elect his remedy. The Turners failed to file their Whistleblower claims within the required period. The trial court did not err in granting summary judgment on these causes of action on statute of limitations grounds. Because of our resolution of this point on limitations, it is not necessary to reach the Turners' remaining arguments under this point. Tex.R.App.P. 90(a). We overrule the Turners' second point of error.

We reverse the trial court's judgment and remand the Turners' disability causes of action for further proceedings. In all other respects the trial court's judgment is affirmed.

---

**15.** The Turners' assertion that RISD violated both the Whistleblower Act and the CHRA is unchallenged. *But see Stinnett,* 858 S.W.2d at 575 (retaliation for reporting age discrimination not valid claim under Whistleblower Act).