**Carmen WILLIAMS and Charles Williams, Appellants,**

v.

**Northrop Grumman VOUGHT, Appellee.**

**No. 05–99–01314–CV.**

Court of Appeals of Texas, Dallas.

July 10, 2001.

104

Donald W. Hill, Law Office of Don Hill, Dallas, for appellants.

Maureen F. Moore, Karger Key Barnes & Springer, L.L.P., Irving, for appellee.

Before Justices LAGARDE, MORRIS, and FITZGERALD.

## OPINION

Opinion By Justice FITZGERALD.

Carmen Williams and her husband, Charles Williams, sued their employer Northrop Grumman Vought (NGV). Carmen asserted a claim for sexual harassment under the Texas Labor Code, and both Carmen and Charles brought claims for intentional infliction of emotional distress. The trial court granted summary judgment in favor of NGV on Charles's claim and on Carmen's claim for sexual harassment arising prior to October 4, 1995. The trial court later granted a directed verdict for NGV on Carmen's intentional infliction of emotional distress claim. The trial court submitted Carmen's claim for sexual harassment after October 4, 1995 to a jury, and the jury returned a verdict in favor of NGV. In five points of error, the Williamses contend the trial court (1) erred in granting summary judgment for NGV on Carmen's claim for sexual harassment prior to October 4, 1995 and on Charles's intentional infliction of emotional distress claim; (2) erred in granting a directed verdict on Carmen's claim for intentional infliction of emotional distress; (3) improperly instructed the jury on the essential elements of Carmen's sexual

harassment claim arising after October 4, 1995; and (4) erred in denying Carmen's motion for partial summary judgment. For reasons that follow, we affirm the trial court's judgment in part and reverse and remand in part.

## BACKGROUND

Carmen worked for NGV, a manufacturer of airplane parts, in the sheet metal department. Her husband Charles also worked for NGV in a different department. In August 1995, Carmen's supervisor, Bill Harvey, allegedly began sexually harassing her. Carmen alleged that Harvey made unwelcome sexual advances and engaged in other offensive verbal and physical conduct which created a hostile work environment. In October 1995, Carmen complained about the alleged harassment to other NGV supervisors. After an investigation, NGV placed Harvey on a two-week unpaid disciplinary suspension. Also in October, on the order of a psychiatrist, Carmen took a leave of absence from NGV for "major depressive disorder."

On November 22, 1995, Carmen filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC), asserting she was sexually harassed by her supervisor at NGV and that NGV discriminated against her because of her gender in violation of Title VII of the Civil Rights Act of 1964. In her EEOC complaint, Carmen indicated the discrimination took place between the dates of August 15, 1995 and October 4, 1995. On November 22, 1995, the same day Carmen filed her complaint with the EEOC, the EEOC forwarded a copy of the charge of discrimination to the Texas Commission on Human Rights (TCHR). The EEOC also issued Carmen a right to sue letter. The letter informed Carmen that the EEOC was "terminating its process with respect to [her] charge" and that if she intended to sue NGV, she was required to do so within ninety days of her receipt of the notice. Carmen did not file suit within ninety days of November 22, 1995.

On January 22, 1996, Carmen returned to work and was given a different job assignment. Although she was still in the sheet metal department, she was assigned to "deburr," a labor intensive position; her previous position had been "making tags," which was more like an office job. Harvey was no longer Carmen's supervisor. Carmen alleged, however, that Harvey began "stalking" her on the job. She took another leave of absence on January 31, 1996.

On March 11, 1996, Carmen filed a second charge of discrimination with the EEOC based on Harvey's alleged sexual harassment. She again asserted NGV discriminated against her in violation of the Civil Rights Act of 1964. Carmen indicated the discrimination took place between the dates of August 1, 1995 and January 31, 1996. The EEOC forwarded a copy of the second charge of discrimination to the TCHR and informed the TCHR that the EEOC would initially investigate the charge. On November 18, 1996, the TCHR issued Carmen a notice of her right to file a civil action. The EEOC issued Carmen a right to sue letter on February 10, 1997.

On January 2, 1997, the Williamses filed this suit against NGV.[1] Carmen alleged that she was sexually harassed in violation of the Texas Labor Code, and she and Charles each asserted a cause of action for intentional infliction of emotional distress.[2]

---

1. The Williamses also sued Harvey, but eventually nonsuited their claims against him.

2. The Williamses also asserted claims for negligent training and supervision, and Carmen asserted a claim for assault and battery. The trial court granted summary judgment for

The Williamses alleged that NGV was vicariously liable for the actions of its employee, Harvey. The trial court granted summary judgment in favor of NGV on Charles's claim and on Carmen's claim for sexual harassment occurring prior to October 4, 1995. The trial court later granted a directed verdict for NGV on Carmen's intentional infliction of emotional distress claim. The trial court submitted Carmen's claim for sexual harassment after October 4, 1995 to a jury, and the jury returned a verdict in favor of NGV. This appeal followed.

### SEXUAL HARASSMENT CLAIM ARISING PRIOR TO OCTOBER 4, 1995

In point of error one, Carmen contends the trial court erred in granting NGV's motion for partial summary judgment regarding her claim for sexual harassment that occurred prior to October 4, 1995. In its motion for summary judgment, NGV asserted it was entitled to summary judgment on Carmen's sexual harassment claim under the Texas Commission on Human Rights Act (TCHRA)[3] because Carmen chose to pursue her harassment complaint against NGV under federal law.[4] NGV also asserted that, at a minimum, it was entitled to summary judgment on Carmen's claim for actions occurring before October 4, 1995 because Carmen included those allegations in the first charge of discrimination she filed with the EEOC and, because she did not file suit within ninety days of the date the EEOC issued a right to sue letter with respect to that charge, she was precluded from challenging any of those actions. The trial court granted NGV's motion for partial summary judgment with respect to Carmen's

NGV on those claims, and, on appeal, the Williamses do not complain about the trial court's disposition of them.

claim arising under the TCHRA prior to October 4, 1995.

The standards for reviewing a traditional summary judgment are well established. See TEX.R. CIV. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). When reviewing a summary judgment record, this Court applies the following standards:

1. The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law;

2. In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true; and

3. Every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in its favor.

TEX.R. CIV. P. 166a(c); *Nixon*, 690 S.W.2d at 548–49.

■ One of the TCHRA's purposes is correlation of state law with federal law in the area of discrimination in employment. *Schroeder v. Tex. Iron Works, Inc.*, 813 S.W.2d 483, 485 (Tex.1991). Like Title VII, its federal counterpart, the TCHRA prohibits an employer from discriminating against an individual with respect to compensation, or the terms, conditions, or privileges of employment because of race, color, disability, religion, sex, and national origin. *See* TEX. LAB.CODE ANN. § 21.051 (Vernon 1996); *see also* 42 U.S.C.A. § 2000e–2 (West 1994).

■ Filing a complaint with the TCHR is a mandatory prerequisite to fil-

3. TEX. LAB.CODE ANN. §§ 21.001–.556 (Vernon 1996 & Supp.2001).

4. *See* 42 U.S.C.A. § 2000e–2 (West 1994).

ing a civil action alleging violations of the TCHRA. *Schroeder*, 813 S.W.2d at 488; *Vincent v. W. Tex. State Univ.*, 895 S.W.2d 469, 473 (Tex.App.—Amarillo 1995, no writ). Such a complaint must be filed within 180 days after the date the alleged unlawful employment practice occurred. TEX. LAB.CODE ANN. § 21.202 (Vernon 1996). A complaint filed with the EEOC, and forwarded by the EEOC to the TCHR, satisfies the requirements of the TCHRA. *Price v. Philadelphia Am. Life Ins. Co.*, 934 S.W.2d 771, 774 (Tex.App.—Houston [14th Dist.] 1996, no writ). A complaint must state: (1) that an unlawful employment practice has been committed; (2) the facts on which the complaint is based, including the date, place, and circumstances of the alleged unlawful employment practice; and (3) facts sufficient to enable the TCHR to identify the respondent. TEX. LAB.CODE ANN. § 21.201(c) (Vernon 1996). The complainant may bring a civil action against the respondent within sixty days after the date a notice of the right to file a civil action is received from the TCHR. *Id.* § 21.254 (Vernon 1996).

■ Carmen contends her decision not to file a Title VII claim did not preclude her from filing this suit under the TCHRA. NGV responds with three reasons the trial court properly granted summary judgment with respect to Carmen's harassment claim from August through October of 1995. First, NGV asserts that Carmen never properly asserted a state court claim because she did not mention the TCHRA in the complaints she filed with the EEOC; instead, she mentioned only Title VII. In support of this argument, NGV relies exclusively on *Davis v. North Carolina Department of Correction*, 48 F.3d 134, 139 (4th Cir.1995). In *Davis*, Davis challenged the removal of his employment discrimination claim from a North Carolina administrative agency to a federal district court. Davis filed a claim with the EEOC, alleging he was discriminated against because of his race in violation of Title VII. The claim did not mention the North Carolina anti-discrimination law. *Id.* at 136. The EEOC referred Davis's complaint to the appropriate state agency. The state agency investigated the claim and determined there was reasonable cause to believe the employer violated Title VII. Davis opted for a hearing before a state administrative law judge. The employer had the action removed to federal district court. *Id.* The EEOC, however, had never issued a right to sue letter. *Id.* at 138. Because a right to sue letter from the EEOC is a prerequisite to bringing a Title VII claim in federal court, the Fourth Circuit concluded the federal district court was without removal jurisdiction to consider Davis's complaint. *Id.*

■ Recognizing that it was not essential to its disposition of the case, the *Davis* court went on to note that Davis never raised a claim under state law before the state agency because his complaint, filed with the EEOC and referred to the state agency, mentioned only Title VII. *Id.* at 139. Because Davis steadfastly maintained that he brought only a Title VII claim and the state referral agency unequivocally addressed only that claim, proceedings under state law had not commenced. Title VII requires that proceedings under state law be commenced before Title VII's federal administrative process can begin. *Id.* at 138–39.

*Davis* does not persuade us Carmen has not properly brought any state law claims because her EEOC claims refer only to Title VII. Unlike the instant case, the complainant in *Davis* did not assert that he brought any state law claims, and the North Carolina state agency expressly addressed only a federal claim. The *Davis*

court itself acknowledged that these facts made the case "something of an aberration." *Id.* at 141. Further, as stated previously, section 21.201(c) of the labor code sets out the requirements of a complaint under the TCHRA, and identification of the TCHRA is not one of them. *See* Tex. Lab.Code Ann. § 21.201(c). The statute does require a complaint to state the facts on which it is based, including the date, place, and circumstances of the alleged unlawful employment practice. *Id.* The facts in Carmen's complaint allege an unlawful employment practice under both Title VII and the TCHRA. North Carolina's prerequisites to bringing a civil rights claim are not relevant to a determination of whether Carmen complied with the TCHRA.

■ Next, NGV contends that Carmen was not allowed to revive her claim for harassment occurring between August and October 1995 in her second charge of discrimination because those allegations were the basis for her first charge, and she did not timely file suit on that charge after the EEOC issued its first right to sue letter. NGV relies on cases prohibiting the refiling of lapsed claims. *See, e.g., Vitello v. Liturgy Training Publ'ns,* 932 F.Supp. 1093, 1098 (N.D.Ill.1996). However, in a recent decision, the Fifth Circuit determined, as "an issue of first impression," that an EEOC right to sue letter is not interchangeable with a TCHR right to sue letter for purposes of filing a civil action. *Jones v. Grinnell Corp.,* 235 F.3d 972, 974 (5th Cir.2001). Whether the EEOC gave Carmen permission to sue is irrelevant to her right to sue under the TCHRA. *See id.; see also Vielma v. Eureka Co.,* 218 F.3d 458, 461–62 (5th Cir.2000) (holding that receipt of EEOC right to sue letter does not start sixty-day period for filing suit under TCHRA). NGV did not present any summary judg-

ment evidence that the TCHR ever issued Carmen a right to sue letter on her first charge. NGV's arguments about refiling a lapsed claim are thus inapplicable.

■ Finally, NGV contends section 21.211 of the TCHRA prohibits Carmen from pursuing state law harassment claims against it. Section 21.211, entitled "Election of Remedies," provides:

A person who has initiated an action in a court of competent jurisdiction or who has an action pending before an administrative agency under other law or an order or ordinance of a political subdivision of this state based on an act that would be an unlawful employment practice under this chapter may not file a complaint under this subchapter for the same grievance.

Tex. Lab.Code Ann. § 21.211 (Vernon 1996). At the time Carmen instituted this suit, her second EEOC charge had been filed with the EEOC. Thus, according to NGV, because Carmen had an action pending before an administrative agency under other law, she was precluded from pursuing a harassment claim against NGV in state court. We disagree.

■ Section 21.211 is susceptible to different interpretations depending on how the words "of this state" are applied. Whether "of this state" limits only the words immediately preceding it, "political subdivision," or limits everything after the word "initiated" changes the meaning greatly. If the former, then NGV's argument that the section prohibits an employee from bringing a TCHRA claim when an EEOC claim is pending would be correct. However, if the latter, then NGV's argument would be incorrect because only actions pending in state courts and agencies would limit an employee's right to seek relief under the TCHRA; an action pending in a federal court or agency would not limit an employee's right to seek relief

under the TCHRA. NGV's interpretation applies a rule of construction to resolve this issue—the doctrine of the last antecedent. This doctrine limits the application of a qualifying word or phrase to the words immediately preceding it. *See Spradlin v. Jim Walter Homes, Inc.,* 9 S.W.3d 473, 475 (Tex.App.—Dallas) (*Spradlin I*), *aff'd,* 34 S.W.3d 578 (Tex. 2000) (*Spradlin II*). This doctrine, however, is neither controlling nor inflexible. *See Spradlin II,* 34 S.W.3d at 580. The application of the doctrine may be rebutted by the circumstances, and it should not be applied without regard to the meaning of the statute's language read as a whole. *See Spradlin I,* 9 S.W.3d at 475.

Applying the doctrine of the last antecedent to determine the meaning of the phrase "of this state" results in the antecedent being limited to the words, "political subdivision." Applying this meaning to the statute results, as NGV asserts, in Carmen not being able to assert a claim under the TCHRA if she has a claim pending before the EEOC. Before concluding that the doctrine is applicable and that NGV's construction is correct, we must determine whether the interpretation of the statute to which it leads is rebutted by the circumstances and whether it is consistent with the meaning of the statute's language read as a whole.

The federal and state statutes governing claims brought before the EEOC and the TCHR specifically authorize the procedural scheme whereby claims of unlawful employment practices may be simultaneously filed with the EEOC and the TCHR. Pursuant to a worksharing agreement between the federal and state agencies, the TCHRA set up the TCHR as the state "deferral agency" to investigate and resolve employment discrimination claims. *See Schroeder,* 813 S.W.2d at 485; *Stinnett v. Williamson County Sheriff's Dep't,* 858 S.W.2d 573, 576 (Tex.App.—Austin 1993, writ denied). If a state has enacted its own anti-discrimination laws and created an agency to process claims under that law, as Texas has done, the EEOC must defer to the state agency for at least sixty days to allow investigation and resolution at the state level. *See* 42 U.S.C.A. § 2000e–5(c) (West 1994); 29 U.S.C.A. § 633 (West 1999); TEX. LAB.CODE ANN. § 21.204 (Vernon 1996) (if federal government has referred complaint to commission or has deferred jurisdiction over subject matter of complaint to commission, commission shall promptly investigate allegations in complaint); *see also Schroeder,* 813 S.W.2d at 485; *Stinnett,* 858 S.W.2d at 576. Thus, the statutes mandating deferral by the EEOC and investigation by the TCHR contemplate that the charges will be filed both with the EEOC and the TCHR while the claims are investigated. *See* 42 U.S.C.A. § 2000e–5(c), (d); 29 U.S.C.A. § 633; TEX. LAB.CODE ANN. § 21.204.

■■■■■ Here, the stated purposes of the TCHRA include providing "for the execution of the policies of Title VII" and identifying and creating "an authority," *i.e.,* the TCHR, to effectuate those policies. TEX. LAB.CODE ANN. § 21.001. Thus, in response to the federal statutes, the legislature set up the TCHRA to provide, at a state level, maximum review and relief in cases of unlawful employment practices.[5] Under the worksharing agreement, the TCHR and the EEOC are intertwined, operating together to provide such protec-

---

**5.** In short, "the TCHRA is the state counterpart to Title VII." *Martin v. Kroger,* 65 F.Supp.2d 516, 530 (S.D.Tex.1999); *aff'd,* 224 F.3d 765 (5th Cir.2000); *see Allison v. City of* *Fort Worth,* 60 F.Supp.2d 589, 593 (N.D.Tex. 1999) (citing *Farrington v. Sysco Food Servs., Inc.,* 865 S.W.2d 247, 251 (Tex.App.—Houston [1st Dist.] 1993, writ denied)).

tion and relief. A restriction on an employee's right to seek relief under the TCHRA because of a filing with the EEOC under parallel federal law[6] would defeat the stated purpose of the statute to provide additional protection at the state level. *See* Tex. Lab.Code Ann. § 21.001; *cf. Perez v. Living Ctrs.-Devcon, Inc.*, 963 S.W.2d 870, 874 (Tex.App.—San Antonio 1998, pet. denied) (analyzing legislative history of TCHRA and recognizing that TCHRA was meant to expedite and localize processing of employment discrimination claims being processed by EEOC).[7] Because the state and federal statutes and commissions work together to provide the same remedy, NGV's interpretation of section 21.211 as barring simultaneous actions under the TCHRA and the EEOC would not result in an election of remedies but in an election of forums. We therefore conclude that applying section 21.211 to prohibit a filing under the TCHRA when an EEOC charge has been filed would lead to an absurd result not intended by the legislature.[8] We conclude the circumstances rebut application of the doctrine of the last antecedent, and we further conclude section 21.211 does not apply in this case.[9]

---

**6.** The TCHRA provides that "[a]n employer commits an unlawful employment practice if because of race, color, disability, religion, sex, national origin, or age the employer:
(1) fails or refuses to hire an individual, discharges an individual, or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment; or
(2) limits, segregates, or classifies an employee or applicant for employment in a manner that would deprive or tend to deprive an individual of any employment opportunity or adversely affect in any other manner the status of an employee."
Tex. Lab.Code Ann. § 21.051.
Title VII provides that "[i]t shall be an unlawful employment practice for an employer-
(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin."
42 U.S.C.A. § 2000e-2(a).

**7.** There is no danger of a double recovery when a plaintiff pursues her TCHRA claim while the EEOC charge is pending. A plaintiff who files with both the EEOC and the TCHR may pursue her cause of action in either state or federal court. Once she has pursued either her state or federal claims to a final judgment, that judgment will be *res judicata* as to the remaining action. *See Turner v. Richardson I.S.D.*, 885 S.W.2d 553, 558 (Tex. App.—Dallas 1994, writ denied); *see also Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 652 (Tex.1996).

**8.** A related "absurd result" would occur if a plaintiff pursued a claim under the TCHRA after being forced to dismiss her filing with the EEOC by an application of section 21.211, and then had the statute of limitations run on any EEOC claim she may have had. *See* 42 U.S.C.A. § 2000e-5(e) (Title VII requires aggrieved employee to file charge of employment discrimination with EEOC within 300 days after date alleged unlawful employment practice occurred).

**9.** The *Perez* court, in holding section 21.211 does not preempt common law causes of action arising from conduct that is also actionable under the TCHRA, recognized that the purpose of 21.211 is not to preclude other causes of action; rather, the purpose is to preclude a plaintiff from suing a defendant-employer for a non-TCHRA cause of action for conduct arising from the same facts as employment discrimination and then pursuing a claim of employment discrimination through the administrative review system established under the TCHRA. *Perez*, 963 S.W.2d at 874; *see also Gonzales v. Willis*, 995 S.W.2d 729, 737–38 (Tex.App.—San Antonio 1999, no pet.).

■ Although Carmen waived her right to bring a Title VII claim in federal court arising from harassment between August and October 1995 because she did not file such a suit after the EEOC issued her a right to sue notice on her first charge of discrimination, we see no reason why Carmen's waiver of her federal right should also effect a waiver of her right to bring this state law action. The TCHR issued Carmen a right to sue letter on her second charge of discrimination on November 18, 1996. She timely brought this action within sixty days of receiving that letter. Thus, she did not waive her right to bring this action.

Because NGV failed to establish its entitlement to summary judgment as a matter of law, we conclude the trial court erred in granting summary judgment for NGV on Carmen's claim arising under the TCHRA prior to October 4, 1995.[10] We sustain point of error one.

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

In point of error two, Charles contends the trial court erred in granting summary judgment for NGV with respect to his claim for intentional infliction of emotional distress. In its motion for summary judgment, NGV asserted it was entitled to summary judgment under rule of civil procedure 166a(i) because Charles presented no evidence that Harvey's conduct was extreme and outrageous, one of the elements of an intentional infliction of emotional distress claim. See Tex.R. Civ. P. 166a(i).

Under rule 166a(i) a party may move for summary judgment, asserting there is no evidence of one or more essential elements of the nonmovant's claims upon which the nonmovant would have the burden of proof at trial. Tex.R. Civ. P. 166(a)(i); Gen. Mills Rests., Inc. v. Tex. Wings, Inc., 12 S.W.3d 827, 832 (Tex.App.—Dallas 2000, no pet.). The movant does not bear the burden of establishing each element of its own claim or defense; rather, the burden is placed on the nonmovant to present enough evidence to be entitled to a trial. See Gen. Mills, 12 S.W.3d at 832. If the nonmovant is unable to provide evidence raising a genuine fact issue on the challenged elements, the trial judge must grant the motion. Id.

Because a no-evidence summary judgment is essentially a pretrial directed verdict, we apply the same legal sufficiency standard in reviewing a no-evidence summary judgment as we apply in reviewing a directed verdict. Id. at 832–33. Considering all the evidence in the light most favorable to the party against whom the no-evidence summary judgment was rendered and disregarding all contrary evidence and inferences, we determine whether the nonmovant produced any evidence of probative force to raise a fact issue on the material questions presented. Id. at 833; Roth v. FFP Operating Partners, L.P., 994 S.W.2d 190, 195 (Tex.App.—Amarillo 1999, pet. denied). If the nonmovant presents more than a scintilla of probative evidence to raise a genuine issue of material fact, the no-evidence summary judgment should not be granted. Gen. Mills, 12 S.W.3d at 833; Jackson v. Fiesta Mart, Inc., 979 S.W.2d 68, 70 (Tex.App.—Austin 1998, no pet.). More than a scintilla of evidence exists if the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." Gen. Mills, 12 S.W.3d at 833 (quoting Merrell

---

10. We note that Carmen may be entitled to bring a sexual harassment claim for those unlawful employment practices that occurred within the 180 days prior to the filing of her complaint with the TCHR. See Tex. Lab.Code Ann. § 21.202.

*Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex.1997)).

■■■■ In an employment context, an employee may recover damages for intentional infliction of emotional distress as long as the employee establishes the elements of the cause of action. *GTE Southwest, Inc. v. Bruce*, 998 S.W.2d 605, 611 (Tex.1999). To establish intentional infliction of emotional distress, a plaintiff must prove that: (1) the defendant acted intentionally or recklessly; (2) the conduct was extreme and outrageous; (3) the actions of the defendant caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe. *Id.* Conduct is extreme and outrageous when it goes beyond all possible bounds of decency and would be regarded as atrocious and utterly intolerable in a civilized community. *Id.; Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 699 (Tex.1994). Insensitive or even rude behavior does not constitute extreme and outrageous conduct. *Bruce*, 998 S.W.2d at 612. Similarly, "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities do not rise to the level of extreme and outrageous conduct." *Id.* Whether a defendant's conduct is extreme and outrageous is a question of law. *Brewerton v. Dalrymple*, 997 S.W.2d 212, 216 (Tex.1999).

■■■■ In this case, an essential question in determining whether NGV could be liable for Harvey's conduct is whether such conduct was extreme and outrageous. Although Charles contends he presented sufficient evidence to raise a fact issue as to whether such conduct was extreme and outrageous, we disagree. In his response to NGV's no-evidence motion for summary judgment, Charles relied on his deposition testimony about Harvey's actions after Carmen returned to work in January 1996 to raise a fact issue. In his deposition, Charles testified that he and Carmen worked in the same building and that it would take him a "minute or less" to walk from his area to her area. He testified that he saw his wife "maybe once" during an average workday. On two or three occasions, Charles saw Harvey get up from his desk and meet Carmen in the aisle and stare at her. Harvey did not touch Carmen or physically block her way. At least twice, when the Williamses were leaving for the evening, Harvey drove a cart across their path and they had to wait for him to proceed before they could continue. While he was in the cart, Harvey looked at them but did not say anything. Also, on two occasions, when the Williamses were leaving work, although they would not leave through Harvey's area, Harvey would "circle" and meet them and look at them.

Charles's intentional infliction of emotional distress claim is thus based on Harvey's going out of his way at the workplace to look at Charles and his wife. As a matter of law, this conduct was not so extreme and outrageous as to go beyond all possible bounds of decency and to be regarded as utterly intolerable in a civilized community. *See Bruce*, 998 S.W.2d at 611–12; *see also Garcia v. Andrews*, 867 S.W.2d 409, 410 (Tex.App.—Corpus Christi 1993, no writ) (plaintiff did not state claim for intentional infliction of emotional distress because her allegations that her boss asked her if she did her best work in dark, discussed article about different sizes of male parts and how they performed in bed, and looked at her in way that "made her feel as if he was undressing her" were not outrageous as a matter of law). Because Charles failed to present evidence raising a genuine issue of material fact on whether Harvey's conduct was extreme and outrageous, Charles failed to meet his burden to defeat NGV's no-evidence motion for summary judgment, and

the trial court did not err in granting summary judgment in favor of NGV on his intentional infliction of emotion distress claim. We overrule point of error two.

In point of error three, Carmen contends the trial court erred in granting a directed verdict for NGV on her intentional infliction of emotional distress claim because Harvey's conduct upon her return to work was evidence of extreme and outrageous conduct. We apply the same legal sufficiency standard in reviewing the trial court's directed verdict as we did in reviewing the no-evidence summary judgment; we consider all the evidence in the light most favorable to the party against whom the directed verdict was rendered and disregard all contrary evidence and inferences to determine whether any evidence of probative force raised a fact issue on the material questions presented. *See Havner*, 953 S.W.2d at 711; *Gen. Mills*, 12 S.W.3d at 832.

At trial, Carmen testified that when she went back to work in January 1996, Harvey would stand about fifteen feet away from her and stare at her. Harvey had an "evil" or "hateful" look in his eyes. Carmen testified that Harvey "stalked" her, which she described as his going out of his way to run into her at the office. Harvey never said a word to Carmen and never got close enough to touch her. On January 31, Harvey "presented himself in front of [the Williamses]" as they were leaving the plant for the day. Charles also testified that he had witnessed Harvey looking at Carmen in an intimidating or threatening way in January 1996.

Again, Carmen's intentional infliction of emotional distress claim is based on Harvey's going out of his way at their workplace to stare at her in what appeared to her to be a threatening manner. Harvey's conduct was not so extreme and outrageous as to go beyond all possible bounds of decency and to be regarded as utterly intolerable in a civilized community. *See Bruce*, 998 S.W.2d at 611–12.; *see also Garcia*, 867 S.W.2d at 410. Because Carmen failed to present evidence raising a fact issue on whether Harvey's conduct was extreme and outrageous, the trial court did not err in granting a directed verdict on her intentional infliction of emotional distress claim. We overrule point of error three.[11]

### JURY CHARGE

In point of error four, Carmen contends the trial court improperly instructed the jury on the elements of her sexual harassment claim. It appears she is complaining about the court's instructing the jury in the charge that one of the elements of a hostile work environment form of sexual harassment was that the employer knew or should have known of the harassment and failed to take remedial action.[12] Carmen complains the trial

---

11. Because we hold Harvey's conduct as to both Charles and Carmen is not extreme and outrageous as a matter of law, we need not determine whether NGV would be liable to either Charles or Carmen for Harvey's conduct. *Cf. Bruce*, 998 S.W.2d at 617–18 (after finding evidence to support jury's finding that employee's conduct was extreme and outrageous, court analyzed whether employer was liable for employee's conduct).

12. In the Williamses' brief under this point of error, however, the only record reference directs us to a discussion the parties had about an instruction the trial court gave the jury in response to a question it asked during deliberations, rather than to the jury charge. If Carmen is complaining about this instruction, rather than the court's charge, she has not preserved her complaint for our review because neither the jury's question nor the court's response is part of our record and she did not request the inclusion of those items in the record.

court's charge improperly placed the burden of proof on this element on her, rather than requiring NGV to disprove this element, in violation of the supreme court's decisions in *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998), and *Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998).

█ Carmen, however, submitted the following instruction to the trial court in her amended proposed jury instructions: "An employer may be liable for sexual harassment if it knew or should have known of the harassment in question and failed to take prompt remedial action." Carmen's proposed instruction is virtually the same as the instruction submitted. A party cannot complain when the trial court submits an instruction substantially similar to one it requested. *Maddox v. Denka Chem. Corp.*, 930 S.W.2d 668, 670 (Tex. App.—Houston [1st Dist.] 1996, no writ); *Marino v. Hartsfield*, 877 S.W.2d 508, 513 (Tex.App.—Beaumont 1994, writ denied). Further, Carmen waived any error in the trial court's submission of the complained-of instruction by failing to object to the charge on this ground. *See Spencer v. Eagle Star Ins. Co.*, 876 S.W.2d 154, 157 (Tex.1994); *Kirkpatrick v. Mem'l Hosp.*, 862 S.W.2d 762, 769 (Tex.App.—Dallas 1993, writ denied). We overrule the fourth point of error.

### CARMEN'S MOTION FOR PARTIAL SUMMARY JUDGMENT

█ In point of error five, Carmen contends the trial court erred in denying her motion for partial summary judgment. In the motion, Carmen asserted NGV was not entitled to raise as an affirmative defense Carmen's failure to take advantage of preventive or corrective opportunities provided by NGV and asked the trial court to strike this affirmative defense from NGV's pleadings. As a prerequisite to presenting a complaint for appellate review about a trial court's ruling on a motion, the record must show that the trial court ruled on the motion. TEX.R.APP. P. 33.1(a); *Coastal Cement Sand Inc. v. First Interstate Credit Alliance, Inc.*, 956 S.W.2d 562, 572 (Tex.App.—Houston [14th Dist.] 1997, pet. denied); *Dallas County v. Sweitzer*, 881 S.W.2d 757, 770 (Tex.App.—Dallas 1994, writ denied). The record in this case does not reflect that the trial court denied, or even considered, Carmen's motion for partial summary judgment. As a result, Carmen has not preserved this complaint for our review. We overrule the fifth point of error.

We reverse the trial court's summary judgment with respect to Carmen's sexual harassment claim arising under the Texas Commission on Human Rights Act prior to October 4, 1995 and remand that claim to the trial court for further proceedings. In all other respects, we affirm the trial court's judgment.

MORRIS, J. concurring.

MORRIS, Justice, concurring.

The foremost precept in Texas for statutory construction is the plain meaning doctrine. At the root of the plain meaning doctrine is the tenet that the legislature chooses its words carefully and means what it says. Accordingly, when construing a statute, we begin with an examination of its exact wording. When the statute's language, in the context of the entire act in which it is contained, logically lends itself to a single, unambiguous meaning, that meaning is applied so long as it comports with common sense and justice.

In discussing the meaning of section 21.211 of the Texas Labor Code,[1] the majority concludes that the phrase "of this state" modifies only the words "political subdivision." The majority goes on to conclude that, given this construction, the statute cannot be applied in this case because to do so would lead to an absurd result. Although I agree section 21.211 is not applicable here, I do so because of the statute's plain meaning and not because of the conclusion reached by the majority.

The prohibition against filing a complaint set forth in section 21.211 applies to a person who is already the complainant in either of two types of actions: an action in a court of competent jurisdiction or an action pending before an administrative agency. The statute, which is entitled "Election of Remedies," targets only persons who are pursuing forms of redress other than an unlawful employment practice claim and, therefore, is limited to those who are pursuing actions under "other law or an order or ordinance of a political subdivision of this state." *See Schroeder v. Tex. Iron Works, Inc.,* 813 S.W.2d 483, 487 (Tex.1991). Although the legislature placed the phrase "of this state" after the words "order or ordinance of a political subdivision," nothing in the statute suggests that orders and ordinances should be treated differently than laws. It is a longstanding principle of statutory construction that words grouped in a list should be given a related meaning. *See Riverside Nat'l Bank v. Lewis,* 603 S.W.2d 169, 174 n. 2 (Tex.1980). Pursuant to the language of the statute, therefore, an action pending before an administrative agency would have to be brought under other law of this state or under an order or ordinance of a political subdivision of this state before section 21.211 would apply.

Applying the "doctrine of the last antecedent," an aid to construction invoked by the majority, yields the same result. By virtue of the doctrine of the last antecedent, a qualifying phrase is confined to the words and phrases immediately preceding it to which it may be applied without impairing the meaning of the sentence. *Spradlin v. Jim Walter Homes, Inc.,* 9 S.W.3d 473, 475 (Tex.App.—Dallas), *aff'd,* 34 S.W.3d 578 (Tex.2000). Here, the two phrases "other law" and "order or ordinance of a political subdivision" precede the qualifying phrase "of this state." The phrase "of this state" may be applied to both "other law" and "order or ordinance of a political subdivision" without impairing the meaning of the sentence. Indeed, applying the qualifying phrase "of this state" to the phrase "other law" aligns the meaning of the sentence with the purposes of the Act.

Among the stated purposes of the Act is to provide for the execution of the policies of Title VII of the Civil Rights Act and Title I of the Americans with Disabilities Act. TEX. LAB.CODE ANN. § 21.001 (Vernon 1996). To effectuate this goal, the Act provides for the referral of complaints from the federal government to the Texas Commission on Human Rights for investigation. *See id.* § 21.204. A complaint referred by the federal Equal Employment Opportunity Commission to the TCHR is

---

1. Section 21.211 states:
   A person who has initiated an action in a court of competent jurisdiction or who has an action pending before an administrative agency under other law or an order or ordinance of a political subdivision of this state based on an act that would be an unlawful employment practice under this chapter may not file a complaint under this subchapter for the same grievance.
   TEX. LAB.CODE ANN. § 21.211 (Vernon 1996).

considered filed with the TCHR when the TCHR receives it. *Price v. Phila. Am. Life Ins.*, 934 S.W.2d 771, 773 (Tex.App.—Houston [14th Dist.] 1996, no writ). The referral by the EEOC is the equivalent of a "filing" by the complainant with the TCHR. *See id.* at 773–74. Section 21.211 prohibits, however, the filing of a complaint with the TCHR if the complainant already has an action pending before an administrative agency. If section 21.211 were read to prohibit a person from filing a complaint with the TCHR after first filing a complaint with the EEOC, section 21.211 would be violated every time the EEOC referred a complaint to the TCHR. Section 21.211 would, therefore, conflict with section 21.204, which expressly permits such referrals. Reading the phrase "of this state" to qualify the phrase "other law" avoids this conflict and accomplishes the purpose of the Act as intended by the legislature.

Applying the plain meaning of section 21.211, I conclude that Carmen Williams's pending charge with the EEOC does not prevent her from pursuing a harassment claim against NGV in state court. Therefore, I concur in the majority's conclusion, although not necessarily in its analysis, that section 21.211 does not preclude Williams's suit. I join the majority in the disposition of the other issues presented.